In the Matter of ELLA M. GABLER, Doing Business as TOMMY'S RESTAURANT, Petitioner, v. NEW YORK STATE LIQUOR AUTHORITY, Respondent.— Determination modified by vacating the $500 bond claim and as so modified confirmed, without costs. Memorandum: This is a proceeding under article 78 of the CPLR to review a determination of the New York State Liquor Authority canceling a special on-premises liquor license issued to petitioner on May 22, 1969 and renewed annually thereafter, the last renewal to expire September 30, 1973. On September 6, 1972 the State Liquor Authority instituted a proceeding to revoke petitioner's license upon a charge that the licensee violated section 111 of the Alcoholic Beverage Control Law and the terms of the license issued to her in that she permitted one Theodore Fairbanks, a person not named in the license, to avail himself of the license issued to her. Following a hearing at which six witnesses testified and 20 exhibits were received in evidence upon the charge, the Deputy Commissioner found, among other things, that prior to April, 1969 Fairbanks, 67 years of age, ceased his employment and applied for social security; that on April 3, 1969 petitioner and Fairbanks entered into an agreement to purchase the property now occupied by Tommy's Restaurant and on the same day petitioner filed an application for a special on-premises liquor license; that on June 9, 1969, 18 days after the license was issued, the petitioner, now licensee, opened a bank account for the premises empowering Fairbanks or licensee to write checks on Tommy's Restaurant account; that on October 6, 1969 Fairbanks, in an application for a $3,000 bank loan, stated that he was "self-employed — position held — owner — Tommy's Restaurant"; that the proceeds of the loan were deposited in the business checking account although he had his own personal account; that Fairbanks tended bar, ordered alcoholic beverages and generally managed the business; that he paid personal expenses, including real estate taxes, a $5,000 individual note and other personal items, from the business checking account. He admitted that he worked on the licensed premises from the time of the issuance of the license to the time of the hearing; that he never received a salary for the services rendered to the licensee and that he had not filed an income tax return since 1969, stating he had no reportable income. He also stated that the reason he was not part of the licensed premises was because he was separated from his wife and was advised that if he became a partner in the premises his wife would have a legal claim on the premises. On March 14, 1973 members of the State Liquor Authority unanimously adopted the findings of the hearing officer, sustained the charge and imposed as an appropriate penalty a cancellation of the license, plus a $500 bond claim. We conclude that there is substantial evidence to sustain the findings that petitioner violated section 111 of the Alcoholic Beverage Control Law. The evidence discloses that Fairbanks perpetrated a fraud upon his wife, the government and the public interest, made possible by the action of the licensee; this warrants a substantial penalty. Upon the record there was a reasonable basis for the cancellation of the license and the determination to do so was not arbitrary, capricious or an abuse of discretion and does not shock our sense of fairness (*Matter of Stolz* v. *Board of Regents,* 4 A D 2d 361). However, we feel that cancellation without imposing a bond claim of

$500 is adequate penalty. In *Matter of Potter* v. *New York State Liq. Auth.* (37 A D 2d 760), cited by the dissent, the petitioner Mrs. Taylor began to operate a restaurant and tavern in 1964. Her husband left her in 1965 and she continued to carry on the business by herself; thereafter she met Potter, who assisted her in the operation of the tavern but received no benefit from his efforts. He later moved in and lived with her and they were married in 1970. On advice of an income tax service, she filed a partnership income tax return in 1970 showing net income divided equally between the two. She testified that it was all an innocent mistake. In these circumstances the Commissioner found that petitioner permitted Potter to avail himself of her license. Three members of the Authority voted to cancel and one member voted that only a letter of warning be sent. This court stated that "there is no evidence that he was 'availing' himself of her license in the sense that he was using the license for his own benefit" and modified the punishment to a letter of warning. In the instant case the record clearly demonstrates that Fairbanks intended from the very start to enter into a partnership with petitioner and that the license was used by him for his own benefit. In *Matter of Tafel* v. *O'Connell* (279 App. Div. 1142) this court confirmed a determination revoking a license for violating section 111 of the Alcoholic Beverage Control Law. All concur, except Cardamone and Moule, JJ., who dissent and vote to modify by annulling the cancellation and, as modified, to confirm, in the following memorandum: We dissent and vote to annul the determination of the State Liquor Authority insofar as it cancels petitioner's tavern liquor license. It seems evident that the purpose of the Legislature in requiring that a license issued to any person "shall be available" only to the person specified was to enable the respondent board effectively to control the liquor business and to prevent undesirable persons, ineligible to obtain a license, from operating licensed businesses through a "blind". (Alcoholic Beverage Control Law, § 111; *Matter of Potter* v. *New York State Liq. Auth.*, 37 A D 2d 760; see, also, *Matter of Hacker* v. *State Liq. Auth.*, 19 N Y 2d 177, 184.) This test was applied in *Matter of Potter* v. *New York State Liq. Auth.* (*supra*) where this court concluded that cancellation was excessive. We are unable to distinguish the almost identical factual pattern in *Potter* where the record reveals that the Commissioner made the following findings: an investigator upon visiting the licensed premises was referred by the licensee to one Potter who, when asked what was his interest in the licensed premises, stated that "he was a partner"; that the licensee and Potter filed a partnership return for the premises; that the licensee opened a checking account for the premises on October 21, 1968 and eight days later Potter was given authority to draw checks on this account; later, a new checking account was opened for the licensed premises and Potter was the only person authorized to draw checks on this account which was used by Potter to pay expenses in the operation of the licensed premises. The Commissioner further found that Potter used this same checking account to pay his own personal expenses; that money from this account was used by Potter to pay his Federal and State income taxes; that tax returns showed that Potter received an income of $2,561 from the licensed premises although not listed as an employee and that the licensed premises maintained no payroll records; that the licensee and Potter applied together for a business loan in the amount of $2,250 for which Potter supplied the collateral and the proceeds of this loan were placed in the bank account of the licensed premises. Finally, Potter was arrested and convicted on several occasions, the first occurring in 1959 and the last in 1964 for which he was sentenced to one year in jail. In the instant case, moreover,

the Commissioner found that "Fairbanks has never been convicted of a crime and has no disability which would make him ineligible to receive a liquor license." It has been held by this court that where the use of the licensed premises was not an attempt by an ineligible person to operate the premises through a "blind", the circumstances were deemed "innocent" and the licensee was not held to have permitted the license to be "availed" by another under the statute (*Matter of Lakeside Country Club* v. *New York State Liq. Auth.*, 34 A D 2d 1100). The circumstances here were "innocent" in the same sense as those revealed in *Potter*. It has been consistently held under such circumstances that cancellation of petitioner's license is excessive and disproportionate to the offense and should be annulled (*Matter of Goldsberry* v. *State Liq. Auth.*, 42 A D 2d 814; *Matter of Potter* v. *State Liq. Auth.*, 37 A D 2d 760, *supra*; *Matter of Lakeside Country Club*, v. *State Liq. Auth.*, *supra*; *Matter of Purchase Country Club* v. *State Liq. Auth.*, 35 A D 2d 845). (Review of determination canceling license, transferred by order of Cattaraugus Special Term.) Present — Del Vecchio, J. P., Moule, Cardamone, Simons and Henry, JJ.